UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAMES HAROLD MOORE, JR., ET AL                    CIVIL ACTION

versus                                            No.  03-2390

STATE FARM MUTUAL AUTOMOBILE INS. CO., ET AL      SECTION: E/5

## ORDER AND REASONS

Two motions filed by the State Farm defendants ("State
Farm") are before the Court: 1) a motion to dismiss pursuant to
Fed. R. Civ. P. 12(b)(6) or, in the alternative, to stay (r.d.
#155); and 2) a motion to vacate the Court's Order entered at
r.d. #123, or in the alternative, to stay injunction pending the
appeal by State Farm (r.d. #171).  Oral argument was heard on
both motions on April 12, 2006.  At the close of oral argument,
the Court granted State Farm's motion to dismiss in part,
dismissing plaintiffs' (collectively "Moore") Second Amended
Complaint.  See r.d. #250.  The motion to dismiss Moore's Third
Amended Complaint, or in the alternative to stay, and the motion
to vacate the Court's Order granting in part a preliminary
injunction, (r.d. #123), were taken under advisement.  Having
considered the motions, the parties' memoranda, the pleadings,
and the law, the Court is now prepared to rule on the motions.

I.

Dismissal of a complaint pursuant to F.R.Civ.P. 12(b)(6) is

proper only if the pleadings on their face reveal beyond a doubt that the plaintiff can prove no set of facts that would entitle him to relief, or if an affirmative defense or other bar to relief appears on the face of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Garrett v. Commonwealth Mortg. Corp. of America, 938 F.2d 591, 594 (5th Cir. 1991).  Moreover, the Court must assume that the allegations in plaintiff's complaint are true, and must resolve any doubt regarding the sufficiency of plaintiff's claims in his favor. Fernandez-Montes v. Allied Pilots Ass'n., 987 F.2d 278 (5th Cir. 1993).  Nevertheless, a plaintiff must plead specific facts, not mere conclusional allegations, to avoid dismissal for failure to state a claim.  Collins v. Morgan Stanley Dean Whitter, 224 F.3d 496, 498 (5th Cir. 2000).

In the Third Amended Complaint, Moore added 28 new factual allegations (and incorporates all allegations and counts stated it all prior complaints) in support of eight new counts brought against State Farm and Mary Bitzer, a State Farm corporate officer.  State Farm argues that all claims brought against Mary Bitzer in her individual capacity should be dismissed, along with claims brought against State Farm specifically for (1) whistle blower damages, (2) tortious interference with a contract, (3) damages arising out of the implementation of its marketing plans in 1994 and alleged redlining beginning in 2004, and (4) damages

for alleged breaches of obligations owed by State Farm under
Louisiana insurance law to disclose for approval its plans to
electively write insurance in certain parishes in the State,
should be dismissed.  In its memorandum in support of its motion
to dismiss, State Farm argues that all claims against it in the
Third Amended Complaint should be dismissed.

A.

Some procedural information is appropriate here.  On June
22, 2005, the Court held an evidentiary hearing on Moore's motion
for a preliminary injunction (r.d. #72), and heard oral argument
on State Farm's motion for a more definite statement (r.d. #62).
At that time, the Court struck Count 15 of Moore's Second Amended
Complaint and a portion of paragraph 1 of his Third Amended
Complaint, both regarding Moore's claimed damages from State
Farm's conversion to its HO-W (homeowners) policies.  R.d. #122.
The remaining counts of the Second Amended Complaint alleged that
State Farm's 2004 Strategic Marketing Plan ("SMP"), which
restricted the sale of new homeowner's policies in certain
parishes in Louisiana, constituted illegal redlining and a breach
of its Agency Agreements with Moore, resulting in a reduction in
Moore's income.  At the close of oral argument on April 12, 2006,
on State Farm's the motion to dismiss at issue here, the Court
dismissed the remainder of Moore's Second Amended Complaint,
Counts 12 through 14, which claimed damages arising from State

3

Farm's implementation of its 2004 SMP.  R.d. #250.

Moore's Third Amended Complaint added new factual allegations, QQ-2 through QQ-7, which appear to enlarge the factual allegations made in the Second Amended Complaint regarding State Farm's implementation of its 2004 SMP retrospectively to cover the implementation of its 1994 SMP. Counts 17 and 19 of the Third Amended Complaint claim that State Farm and Mary Bitzer individually are liable damages for "reduction of policies in force and premiums which would have arisen out of the sale of policies of insurance but for the implementation of the SMP in 1994 forward, including also the SMP of 2004 forward ...."  Count 19 also claims damages "for the redlining associated therewith from 2004 forward; and for breaches of obligations owed by State Farm under the regulated insurance laws of the State of Louisiana ... in selectively refusing to write insurance in the state in only certain designated parishes."  Both of these counts arise from the acts complained of in the Second Amended Complaint, simply enlarged to cover damages allegedly suffered by Moore from the implementation of the 1994 SMP forward.  They are here dismissed for the same reasons that all counts in his Second Amended Complaint were dismissed, as now briefly discussed.

State Farm's 1994 and 2004 SMPs are risk management plans that are allowed by the AA4 agreement.  Their implementation is

not a breach of that contract.  Paragraph L of the AA4 provides:

> The Companies retain the right to prescribe all policy
> forms and provisions; premiums, fees, and charges for
> insurance; and rules governing binding, acceptance,
> renewal, rejection, or cancellation of risks, and
> adjustment and payment of losses.

The AA4 contract language, and common business sense, give State

Farm the right to manage its risk exposure.  Regarding the

illegal "redlining" claim, La.R.S. 51:1406(1) (LUTPA), provides

that the provisions of that chapter shall <u>not</u> apply to:

> Actions or transactions subject to the jurisdiction of
> the Louisiana Public Service Commission or other public
> utility regulatory body, the commissioner of financial
> institutions, *the insurance commissioner*, the financial
> institutions and insurance regulators of other states,
> or federal banking regulators who possess authority to
> regulate unfair or deceptive trade practices.

Emphasis supplied.

Moore further argues that State Farm's actions with respect

to the SMPs amount to restraints of the insurance trade, and that

in <u>Edwards v. Your Credit, Inc.</u>, 148 F.3d 427, 435 (5th Cir.

1998), the Fifth Circuit recognized a private right of action for

suits based on fraud or misrepresentations by insurance

companies.  Even if that is so, this is not a suit by an

aggrieved policy holder based on fraud or misrepresentations by

an insurance company regarding policy terms or coverage issues.

Moore claims damages for the reduction of his income and

retirement payments as a State Farm agent resulting from State

Farm's implementation of the SMPs.  Moreover, the LCI has

exclusive jurisdiction over the restraint of trade claim, that
State Farm implemented the SMP without LDI approval, which is
essentially an unfair trade practices claim pursuant to the
LUTPA.  The Louisiana Insurance Code, La.R.S. 22:652, 652.4, and
1214(7) spell out the elements of unfair discrimination in the
insurance business, and at Sections 652.4(C) and 1215, empower
the Commissioner of Insurance to enforce the provisions.

B.

Count 18 claims damages against Mary Bitzer individually and
State Farm "arising out of the tortious interference with
contract caused by Mary Bitzer and State Farm's breach of
contract", specifically Bitzer's and State Farm's refusal to
acknowledge Moore's contractual rights to a Termination Review,
and refusal to recognize his "retirement rights" to Termination
Payments associated with a Termination Review.  It further claims
damages for "Bitzer and State Farm's earlier direction to the
management of State Farm to place Moore on non-submission."

In Louisiana, tortious interference with a contract
requires: 1) the existence of a contract; 2) the corporate
officer's knowledge of that contract; 3) the officer's
intentional inducement of the corporation to breach the contract
or render its performance impossible or more burdensome; 4)
absence of justification; and 5) damages.  9 to 5 Fashions, Inc.,
v. Spurney, 538 So.2d 228, 234 (La. 1989).  A corporate officer's

6

actions are justified if the officer acted within the scope of his or her corporate authority and in the reasonable belief that the action was for the benefit of the corporation.  Id., at 231; Thornton v. Lanehart, 723 So.2d 1127, 1132 (La.App. 1st Cir. 12/28/98), *writ denied*, 740 So.2d 115 (La. 3/11/99).

In his opposition to State Farm's motion to dismiss, Moore argues that he has also stated a claim for tortious interference with business relations against both State Farm and Mary Bitzer. He bases his claim on Bitzer's and State Farm's refusal to allow him to continue to sell insurance products or to service his State Farm customers in 2002 and 2003, after he was placed on non-submission on August 28, 2002.  A plaintiff claiming tortious interference with business relations "'must show by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff.'" Junior Money Bags, Ltd., v. Segal, 970 F.2d 1, 10 (5th Cir. 1992), *quoting* McCoin v. McGehee, 498 So.2d 272, 274 (La.App. 1st Cir. 1986)(citing Ustica Enterprises, Inc. V. Costello, 434 So.2d 137, 140 (La. App. 5th Cir. 1983)).  However, the interference must be malicious, and the law permits interferences designed to protect a legitimate interest of the defendant.  Id., *citing* Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 601 (5th Cir. 1981).

Six of the "New Factual Allegations" of the Third Amended

7

Complaint[1] address Moore's claim that Bitzer repeatedly
interfered with his contractual right to a Termination Review and
to Termination Payments after his official termination in April
of 2005.  Several refer to the acts of "Bitzer and State Farm"
jointly.  While paragraph QQ-25 alleges that Bitzer "refused to
deal in good faith" regarding his claimed contractual right to a
Termination Review, none of the factual allegations suggest that
Bitzer acted outside of the scope of her corporate authority
regarding the Termination Review, or that she did not reasonably
believe that her actions were in the best interests of the
corporation.  The claim that Bitzer did not act in "good faith"
does not rise to the level of maliciousness required for a tort
of interference with business relations, but rather raises the
factual issue of whether the claimed breach of contract was in
bad faith.  Other than the conclusory allegation that State Farm
ultimately terminated Moore in retaliation for his "whistle-
blower" activities[2], none of the factual allegations assert that
State Farm's acts were not taken in the reasonable belief that
they were designed to protect its legitimate interests or in the
reasonable belief that the action was for the benefit of the
corporation.  Even accepting all factual allegations in Moore's

---

[1]See QQ-8, QQ-12, QQ-15, QQ-16, QQ-24, and QQ-25.

[2]See Part C, *infra*.

8

Third Amended Complaint as true, Bitzer and State Farm are entitled to dismissal of all of Moore's tort claims against them for tortious interference with a contract and tortious interference with business relations.

Count 18 also states claims against State Farm and Mary Bitzer arising from Moore's alleged contractual rights to "cash flow" as "producer of record", to a Termination Review, to retirement rights in contractual Termination Payments, and finally, by placing Moore on "non-submission" and terminating the right of Moore's staff to operate as representatives of State Farm.

The factual allegations in QQ-11 through QQ-16 and QQ-24 through QQ-30 assert that State Farm breached Moore's contractual right to a Termination Review and to Termination Payments.  The factual allegations in QQ-17 through QQ-21 assert that State Farm violated Moore's contractual rights as "producer of record", as defined in La.R.S. 22:1150, to Renewal Commissions for policies he had written for State Farm, Fair Plan, Coastal Plan, NFIP, and Louisiana Assigned Risk, and his rights to contact and service customers for whom he is named as producer of record.  The breach of contract claims in count 18 survive the motion to dismiss.

To the extent that these could be construed as tort claims against Mary Bitzer individually, they are dismissed.  Louisiana courts have held that "... personal liability cannot be imposed

upon the officer, agent or employee simply because of his general administrative responsibility for performance of some function of the employment." <u>Laurents v. Louisiana Mobile Homes, Inc.</u>, 689 So.2d 536, 544 (La.App. 3rd Cir. 2/5/97), *citing* <u>Canter v. Koehring</u>, 283 so.2d 716, 721 (La. 1973). Moore's complaints make no factual allegations that Bitzer acted outside of her general administrative responsibilities.

C.

In Count 16, Moore claims whistle blower damages against State Farm "for acts described in factual allegations set out above".[3] The factual allegations set out in QQ-8 allege that Moore was terminated shortly after his disclosure to the LIRC, the LDI and the LIC of the "illegality" of the rate increase associated with State Farm's HO-W policy form, therefore, the termination was "in retaliation for Moore's whistle-blower activities in complying with the law to disclose illegal rate changes."

State Farm argues that there is no legal authority which entitles Moore to whistle blower damages or whistle blower protection. Moore argues that "whistle blower" is a "term of art" that does apply "to several specific statutory rights".

---

[3]Count 16 also claims damages from State Farm and Fortis for their termination of Plaintiffs' appointment to sell Fortis health insurance products "for reasons that are totally unrelated to the contracts comprising the law between the parties." The Court previously denied Fortis' motion to dismiss or for a more definite statement. See r.d. #222.

Opposition, p. 17.  He does not, however, identify for the Court

any specific statutory right.[4]  Instead, Moore argues as follows:

> The award of damages for breaches of constitutional
> civil rights falls under the umbrella of whistle blower
> damages; and in this case, there is a damage claim for
> the effects of the scheme which is based on violations
> of civil rights of customers who are in the market area
> of Moore and Moore Agency, but geographically redlined
> out of the insurance market by the scheme of State Farm
> precluding selling homeowners insurance to them.

Id.

The Court has already dismissed Moore's claims for damages

from State Farm for its alleged illegal redlining, unfair trade

practices, restrain of trade, and discriminatory impact, all

based on State Farm's implementation of its 1994 and 2004 SMP.

Moreover, Moore does not have standing to bring suit for money

damages on behalf an alleged violation of the civil rights of

unidentified customers.  *See* Lujan v. Defenders of Wildlife, 112

S.Ct. 2130, 2136 (1992)(To meet the constitutional minimum

requirements of standing, a plaintiff must have suffered an

"injury in fact" with "a causal connection between the injury and

the conduct complained of" which can be "redressed by a favorable

decision".) Moore's claim for whistle blower damages is subject

---

[4]LSA-R.S. 23:967 protects employees from reprisals by employers if the employee engages in activities similar to those described by Moore and for which he is claiming whistle blower damages.  However, Moore is not an employee of State Farm, and is not covered by the statute.  At note 9 in his opposition, Moore alludes to a possible conspiracy between State Farm and the State (through the LCI's alleged "implicit approval" of State Farm's 2004 SMP) in violation of 42 U.S.C. 1985(3).  None of the complaints include factual allegations that would support such a claim.

to dismissal.[5]

### D.

In Count 20, Moore seeks damages:

> arising out the refusal of State Farm and Mary Bitzer to acknowledge the rights of Moore and the Moore Agency to deal with NFIP Flood Insurance policy holders, and/or Fair Plan, Coastal Plan, Louisiana Assigned Risk Plan, or State Farm policy holders for whom Moore and the Moore Agency are producers of record.

The claim for damages for a refusal to acknowledge rights to deal with various policy holders is so vague as to almost defy analysis. State Farm argues that no legal or factual basis exists for a claim for damages for its "refusal to recognize" rights to deal with certain insurance policy holders. However, Counts 21, 22 and 23, each of which requests injunctive relief[6], shed some light on Moore's claim stated in Count 20.

Count 21 requests injunctive relief to protect Moore's interest "in dealing with the NFIP insureds, the names addresses and telephone numbers associated with them, the management of their policies ... notwithstanding State Farm's claims to a right or interest to a trade secret interest" in that information.

---

[5]In Count 16, Moore claims that State Farm breached the AA4 agreements by its "refusal to acknowledge the rights of due process before a panel and with a chairman as is extended to protect rights and interests under the ERISA benefits achieved through the termination payments,...." See also QQ-11 and QQ-16. The Court concludes that the "due process" reference is directed only to his claimed administrative procedural rights under the contract, and that there is no claim that State Farm violated his constitutional or statutory due process rights. Likewise, Moore has not stated a claim for any ERISA violation.

[6]See Part II, *infra*.

Count 22 requests injunctive relief preventing State Farm's
"interfering with Moore and/or the Moore Agency servicing the
NFIP customers, and his engaging in business in competition with
State Farm" for more than one year after Moore was placed on non-
submission on August 23, 2002.[7]   Count 23 requests injunctive
relief "against State Farm's interference with" Moore sending a
letter to his customers "advising of their new business
relationship."

   Factual allegations QQ-22 and QQ-23 assert (1) that State
Farm "intends to bar" Moore from soliciting business from his
customers for whom he is producer of record beyond the period of
the non-compete clause in the Agency Agreement, described in the
allegation as an obvious intent to bar him from selling new
business and continuing to operate as an agent to his customers,
and (2) that in a letter to Moore, State Farm's Vice-President of
Agency Tim McFadden demanded that he "shall not deal with" the
names, addresses and telephone numbers of Moore's customers
beyond the contractual non-compete period after he was placed on
non-submission because that information is State Farm's trade
secret.[8]

---

   [7]On "non-submission" status, Moore was prohibited from writing any new
State Farm policies, although he was allowed to service his existing policy
portfolio.  His agency relationship with State Farm was formally and
officially terminated in April, 2005.  The Court notes that more than one year
has passed since the official termination of Moore's Agency Agreement.

   [8]The letter is attached to the Third Amended Complaint at Ex. K.

The nub of these claims is that State Farm's assertion of
its exclusive right to the names, addresses and telephone numbers
and general policy information of Moore's former customer base
causes monetary damages to Moore because, although State Farm
concedes that Moore is entitled to do business selling insurance
in competition with State Farm, State Farm asserts that he is not
entitled to solicit his former State Farm or NFIP customers even
after the expiration of the contractual and statutory non-compete
period because the information regarding those customers is
protected as State Farm's trade secret.

State Farm asserts that Moore is prohibited by collateral
estoppel from asserting the claim that State Farm has no trade
secret interest in the identities of his former NFIP customers.
It argues that in Jim Moore Insurance Agency, Inc., et al v.
State Farm Mutual Automobile Insurance Company, et al, 147
Fed.Appx. 841 (C.A. 11 (Fla.)), the Eleventh Circuit affirmed the
district court's decision that State Farm, and not Jim Moore
Insurance Agency, Inc., owns the NFIP insurance policies.  Even
if State Farm owns those policies, the question remains whether
that ownership, and State Farm's claim to trade secret protection
of the information regarding the names, addresses, telephone
numbers and general policy information of the NFIP policy
holders, can be enforced to prohibit Moore from using that
information to contact his former customers after the contractual

14

and legal non-compete period has expired.

The claims in Counts 20, 21, 22 and 23 are mixed contract and tort claims.  The trade secret issue is on appeal, pending the decision of the Fifth Circuit, and the remaining issues are inexplicably intertwined with the trade secret claim.  State Farm's 12(b)(6) motion to dismiss Counts 20, 21, 22 and 23 of Moore's Third Amended Complaint is denied.

II.

On June 22, 2005, after an evidentiary hearing on Moore's motion for a preliminary injunction[9], the Court granted injunctive relief as to Part A of Moore's motion, and took the remaining six requests for injunctive relief, Parts B through G, under submission.  R.d. #122.  On June 23, 2005, the Court entered an Order and Reasons granting in part and denying in part injunctive relief as to Part C of the motion.  The Court also granted State Farm's request to strike Moore's motion for injunctive relief as to Parts B, D, E, F and G.  R.d. #123.  On June 24, 2005, State Farm appealed that Order.  R.d. #124.

In its second motion now before the Court, State Farm requests that the Court vacate its Order entered at record

---

[9]Moore's motion for injunctive relief, r.d. #57, contained seven specific requests for relief, itemized as A through G.  The multi-part motion covered the substantive requests for injunctive relief stated in Counts 21, 22 and 23 of the Third Amended Complaint.  Although the Counts are not subject to dismissal pursuant to a 12(b)(6) motion, to the extent that the requested injunctive relief in each count was previously decided, those claims for injunctive relief are moot.

document #123 that is now on appeal, or in the alternative, stay

the enforcement of the Order until the Fifth Circuit has ruled on

its appeal.  State Farm argues that the term "general policy

information" is too vague and gives it insufficient notice as to

what conduct is prohibited by the injunction.  It next argues

that the Order granting injunctive relief as to "Part A" of

plaintiffs' motion for injunctive relief impermissibly makes

reference to "the complaint of other document", in violation of

Rule 65(d), and that the "trade secrets" part of the Order

likewise impermissibly referenced "Part C" of plaintiffs' motion.

State Farm also generally argues that the Court applied

inconsistent analyses, inconsistent standards, no analysis of

factors required for issuing injunctive relief, and that the

facts and evidence do not support the Court's conclusion that

plaintiffs were entitled to injunctive relief.

Rule 65(d) provides in part:

> Every order granting an injunction and every
> restraining order shall set forth the reasons for its
> issuance; shall be specific in terms; shall describe in
> reasonable detail, *and not by reference to the
> complaint or other document*, the act or acts sought to
> be restrained; ....

Emphasis supplied.  The June 23, 2005, Order does reference

"plaintiffs' Motion for Injunctive Relief, ¶ XXVII, part C", to

identify the specific part of a multi-part motion for injunctive

relief was being granted.  However, Part C of Moore's motion for

16

injunctive relief is quoted in full in the "Reasons" part of the Court's Order and Reasons.  The "Order" portion states as follows:

> **IT IS ORDERED** that plaintiffs' Motion for Injunctive Relief, ¶ XXVII, part C, is **GRANTED IN PART,** insofar as the Court's finding that the names, addresses and general policy information of State Farms' insureds is not a "trade secret"; and **DENIED IN PART** insofar as plaintiffs' request that the Court prohibit State Farm from restraining plaintiffs' solicitation of State Farm's customers pursuant to the contracts between the parties; ....

The Court finds the language to be reasonably clear.

As for the Order at record document #122, regarding part "A" of the motion for injunctive relief, that motion was granted orally on the record with no argument or objection from State Farm[10].  The JS-10 written document entered into the record by the courtroom deputy describing  what transpired in court states: "MOTION for injunctive relief by plaintiffs (#57) is <u>GRANTED IN PART.</u>  The Court grants the injunction as to Part A of paragraph XXVII of the motion.  The remainder of the motion is taken under submission."

This issue is on appeal and will be decided by the Fifth Circuit.  The Court denies State Farm's motion to vacate the Order and Reasons at record document #123, and alternatively the motion to stay its enforcement.

---

[10]See r.d. #77, Statement of Defendant's Intent Submitted in Response to Magistrate Judge's Request.

III.

Accordingly,

**IT IS ORDERED** that State Farm's motion to dismiss Moore's Third Amended Complaint pursuant to F.R.Civ.P. 12(b)(6), and alternative motion to stay (r.d. #155), is **GRANTED IN PART AND DENIED IN PART** as follows:

(1) **GRANTED AS TO COUNTS 17 AND 19, DISMISSING THOSE COUNTS WITH PREJUDICE;** and,

(2) **GRANTED IN PART AS TO COUNT 16, DISMISSING WITH PREJUDICE ALL WHISTLE BLOWER CLAIMS AGAINST STATE FARM,** and **DENIED IN PART AS TO CLAIMS AGAINST STATE FARM AND FORTIS INSURANCE COMPANY;** and,

(3) **GRANTED IN PART AS TO COUNT 18, DISMISSING WITH PREJUDICE CLAIMS AGAINST MARY BITZER AND STATE FARM FOR TORTIOUS INTERFERENCE WITH A CONTRACT AND TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS,** and **DENIED IN PART AS TO BREACH OF CONTRACT CLAIMS STATED IN COUNT 18**; and,

(4) **GRANTED AS TO ALL CLAIMS AGAINST MARY BITZER INDIVIDUALLY;** and,

(5) **DENIED AS TO COUNTS 20, 21, 22 AND 23;** and,

(6) State Farm's alternative motion to stay is **DENIED.**

18

**IT IS FURTHER ORDERED** that State Farm's motion to vacate Order and/or alternative motion to suspend or stay injunction pending appeal (r.d. #171) is **DENIED.**

New Orleans, Louisiana, June 7, 2006.

**MARCEL LIVAUDAIS, JR.**
United States District Judge