UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES H. MOORE, JR., ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 03-2390**<br>**REF: ALL CASES** |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., ET AL.** | **SECTION "L" (5)** |

## ORDER AND REASONS

Before the Court is State Farm's Motion for Partial Summary Judgment (Rec. Doc. 297). The Court heard oral argument and took this motion under submission. For the following reasons, State Farm's motion is GRANTED.

**I.   BACKGROUND**

On January 1, 1982, James H. Moore, Jr. entered into an individual agent's agreement with State Farm Mutual Automobile Insurance Company, State Farm Life Insurance Company, State Farm Mutual Fire and Casualty Company, and State Farm Mutual General Insurance Company ("State Farm"), allowing him to solicit insurance customers for State Farm. In 1988, Mr. Moore sought approval to incorporate his agency because he had previously been incorporated as a self-employed pharmacist and preferred this form of doing business.

State Farm approved Mr. Moore's request and on January 16, 1989, Mr. Moore, both individually and as President of Jim Moore Insurance Agency, Inc. ("JMIA"), signed a Memorandum of Agreement ("MOA") with State Farm which contemplated a shift from individual to corporate agency. The MOA states that Mr. Moore "decided to terminate his STATE FARM AGENT'S AGREEMENT effective the 28th day of February, 1989; and execute the Corporate Agency Agreement effective the first day of March, 1989." Def.'s SJ ex. A2. The

MOA further states that State Farm "as a matter of policy will not enter into a contract with a Corporate Agency owned in whole or in part by an individual agent if the transaction would result in a substantial payment being made to the individual agent upon termination of the individual agent's contract." *Id.* Accordingly, the MOA includes the following provision:

> Since the transfer of an individual agency into a Corporate Agency does not constitute termination of an individual agency contract within the meaning of the original contract, it is hereby mutually agreed and understood that all payments set forth in Section IV of the STATE FARM AGENT'S AGREEMENT heretofore in existence . . . which otherwise might have become payable to James H. Moore, Jr. under the terms of such Section IV are hereby waived by James H. Moore, Jr.

*Id.*

Subsequently, on March 1, 1989, Mr. Moore, again individually and as President of JMIA, executed a corporate agency agreement with State Farm. The corporate agency agreement provides in Section VI (F) that: "This agreement shall supersede all prior agreements between the parties hereto, written or otherwise, and it shall constitute the sole and entire Agreement between the parties." Def.'s SJ ex. A3. Mr. Moore's individual agent code was destroyed at this time, and JMIA received a new agent code. Since the execution of the corporate agency agreement, all payments and compensation have gone to JMIA rather than to Mr. Moore individually.

This litigation arises from certain changes imposed by State Farm on its insurance agents in recent years. Specifically, in 1999, State Farm asked its agents to voluntarily sign a Licensed Staff Agreement ("LSA"). The LSA is a three-party contract which requires the signatures of State Farm, the agent, and the agent's employees who are licensed to sell insurance. Under the LSA, State Farm would obtain the power to terminate agents' employees for any reason. The LSA also imposes an obligation upon agents' employees to protect State Farm's trade secrets

and includes a one-year restriction on the employees' ability to contact State Farm policyholders upon their separation of employment. Licensed staff who failed to sign the LSA by April 1, 2001, would allegedly no longer be considered "appointed" by State Farm to transact business.

Mr. Moore objected to these alleged interferences and attempts to exercise control over his employees and refused to sign the LSA. Mr. Moore's refusal to acquiesce has set off a chain of events which need not concern the Court at the present time, suffice it to say that Mr. Moore alleges that State Farm has imposed various restrictions that have effectively shut down his business.[1]

On August 22, 2003, Mr. Moore and JMIA ("Plaintiffs") sued State Farm for intentional interference with their employment and/or contractual relationships and seek damages for economic duress and intentional infliction of emotional distress. In their complaint, the Plaintiffs assert various rights under the 1982 individual agency contract.[2]

## II.     PRESENT MOTION

In its present motion for partial summary judgment, State Farm seeks dismissal of any and all of the Plaintiffs' claims under the 1982 individual agency agreement. State Farm argues that the 1982 individual agency agreement did not survive the shift to corporate agency in 1989.

## III.    LAW AND ANALYSIS

---

[1] In a June 7, 2006 Order and Reasons, Judge Livaudais discusses the Plaintiffs' allegations in detail. *See* Rec. Doc. 273.

[2] The Plaintiffs filed a separate action on July 7, 2006, seeking a declaration that they are entitled to indemnity and defense coverage from their insurers. The two suits have been consolidated.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56.  When considering a motion for summary judgment, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004).  If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

It is undisputed that Louisiana law applies to this case.  The Louisiana Civil Code is the foundation of contract law in Louisiana.  A contract has the effect of law for the parties and may be dissolved through consent of the parties.  La. Civ. Code Ann. art. 1983.  Moreover, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."  La. Civ. Code Ann. art. 2046.  Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.  La. Civ. Code Ann. art. 2050.  The interpretation of a contract is a matter of law that is appropriately addressed on summary judgment.  *See Kappa Loyal, L.L.C. v. Plaisance Dragline & Dredging Co., Inc.*, 03-124, p. 6-7 (La. App. 5 Cir. 6/19/03); 848 So.2d 765, 769.

State Farm argues that the 1989 corporate agency agreement clearly and unambiguously states in Section VI (F) that it "shall supersede all prior agreements between the parties hereto." Def.'s SJ ex. A3.  The Court finds that this provision is clear and unambiguous, and does not

lead to absurd consequences, therefore it must be given effect. La. Civ. Code Ann. art. 2046.

Section VI (F) merely confirms the understanding of the parties, memorialized in the MOA, that the 1982 individual agency agreement was terminated and replaced with the 1989 corporate agency agreement.

Pursuant to this clause, the 1989 corporate agency agreement also supersedes the MOA. Nevertheless, the Court finds that the Plaintiffs' reliance on the MOA is misplaced because the MOA as a whole contemplates termination of the 1982 individual agency agreement. The Plaintiffs point to following provision of the MOA to argue that the 1982 individual agency agreement survived the shift to corporate agency:

> Since the transfer of an individual agency into a Corporate Agency does not constitute termination of an individual agency contract *within the meaning of the original contract*, it is hereby mutually agreed and understood that all payments set forth in Section IV of the STATE FARM AGENT'S AGREEMENT heretofore in existence . . . which otherwise might have become payable to James H. Moore, Jr. under the terms of such Section IV are hereby waived by James H. Moore, Jr.

Def.'s SJ ex. A2 (emphasis added). The Plaintiffs argue that the first part of the first sentence demonstrates that the shift to corporate agency did not terminate the individual agency. However, this fragment cannot be read in isolation. When the remainder of this clause is considered in relation to the MOA as a whole, its true purpose becomes clear. This clause recognizes that within the meaning of the individual agency agreement, the mere execution of a corporate agency agreement would not terminate the original contract. In the MOA, however, the parties expressly agreed in clear and unambiguous language to terminate the 1982 individual agency agreement. *See* Def.'s SJ ex. A2 (Mr. Moore "decided to terminate his STATE FARM AGENT'S AGREEMENT effective the 28th day of February, 1989; and execute the Corporate Agency Agreement effective the first day of March, 1989."). Thus, the clause that the Plaintiffs

Page 5

rely on recognizes that as a result of this termination, Mr. Moore is not entitled to termination payments. Although the 1982 agreement was terminated, Mr. Moore's agency was not truly terminated, it merely shifted forms.

### IV.  CONCLUSION

For the foregoing reasons, the Court finds that the 1982 individual agency agreement was terminated and superseded by the 1989 corporate agency agreement, and thus the Plaintiffs cannot assert any rights under the 1982 agreement. Accordingly, State Farm's motion for partial summary judgment is GRANTED.

New Orleans, Louisiana, this __6th__ day of __October__, 2006.

*[signature: Eldon E. Fallon]*
UNITED STATES DISTRICT JUDGE