UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES HAROLD MOORE, JR., ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 03-2390**<br>**REF: ALL CASES** |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, ET AL.** | **SECTION "L" (5)** |

## ORDER & REASONS

James Harold Moore, Jr. was a State Farm insurance agent for approximately twenty-five years. But Mr. Moore's relationship with State Farm began to sour several years ago, and has since sprawled into a number of lawsuits in courts around the country. The continuing addition of parties to the instant litigation has caused the cases in this District to travel between no fewer than four Sections in the past four years. Having been recently assigned to preside over the dispute, the Court now enters an omnibus order resolving a number of outstanding motions.

### I.      BACKGROUND

####    A.      Factual History

In 1982, Mr. Moore entered into an individual agent's agreement with State Farm, allowing him to solicit insurance business on behalf of the company. In 1989, the parties agreed to shift the form of the relationship to one of corporate agency. Accordingly, on March 1, 1989, Mr. Moore and his corporation, Jim Moore Insurance Agency, Inc. (collectively, "Moore"), entered into a corporate agency agreement (known as the "AA4 (Inc.)" agreement) with State

Farm, thereby terminating the individual agency agreement.[1]

For more than a decade, Moore's licensed staff members could do everything except bind coverage in their own name and pay claims. In 1995, however, State Farm implemented Clerical Employee ("CE") Agreements for its agents' staff. The CE agreements authorized agents' staff to bind coverage in their own name and pay claims. Moore and his staff took advantage of this arrangement.

In 1999, State Farm attempted to implement a more restrictive program with the "Licensed Staff Agreement" ("LSA"). The LSA is a three-party contract between State Farm, its agents, and the agents' employees who are licensed to sell insurance. Moore alleges that the LSA improperly gives State Farm certain control over his employees, including the contractual power to terminate them at will. The LSA also imposes on agents and their staff an obligation to protect State Farm's trade secrets and includes a one-year restriction on former staff members' ability to have any contact with State Farm policyholders upon their separation of employment from the agent.[2]

The LSA arrangement was purportedly voluntary. However, any licensed staff who failed to sign an LSA by April 1, 2001 would no longer be considered "appointed" by State Farm

---

[1] The Court has previously held that by virtue of the shift to corporate agency, Mr. Moore cannot assert any rights under the 1982 individual agency agreement. *See Moore v. State Farm Mut. Auto. Ins. Co.*, No. 03-2390, 2006 WL 2925445 (E.D. La. Oct. 10, 2006).

[2] The issue of whether State Farm breached its AA4 Inc. agency contract with Moore by implementing the LSA program appears to have been fully and finally litigated in California state court. *See Patricia Adkins Ins. Agency, Inc. v. State Farm Mut. Auto. Ins. Co.*, 52 Cal. Rptr. 3d 882 (Cal. Ct. App. 2007) (finding that the LSA program breached the AA4 agreement), *petition for review denied*, 2007 Cal. LEXIS 4071 (Cal. Apr. 18, 2007). However, until the preclusive effect, if any, of the *Adkins* case on the claims in the instant litigation can be determined, the Court will defer consideration of several outstanding motions that address issues of liability filed by parties that were litigants in the *Adkins* case.

to transact business. In 2000, Mr. Moore and one of his staff members, Bettye Candies, signed the LSA but reserved their rights pursuant to the AA4 Inc. agency contract. The reservation of rights was rejected by State Farm. Moreover, on February 26, 2001, State Farm terminated the CE agreement of Bettye Candies, and she subsequently resigned, leaving Moore with only one licensed staff member, Cathleen Zuppardo. On August 23, 2002, State Farm placed Moore on "non-submission only" status because Ms. Zuppardo was continuing to provide quotes and assist with applications, activities which are, according to State Farm, reserved for LSA staff only. This has prevented Moore from accepting new business from both existing and new clients. State Farm formally terminated the AA4 Inc. agency agreement with Moore on April 4, 2005.

In addition, in July 2000, State Farm began to market and sell individual health insurance policies underwritten by Fortis Insurance Company. Moore was appointed to sell such policies, but allegedly without his knowledge or consent. In 2003, following the above disputes with State Farm, Fortis terminated Moore's appointment to sell its products as well. Moore has asserted various claims against both State Farm and Fortis with respect this separate appointment and termination.

    **B.    Procedural History**

On August 22, 2003, Moore filed suit in this Court against State Farm Mutual Automobile Insurance Company, State Farm Life Insurance Company, State Farm Mutual Fire & Casualty Company, and State Farm Mutual General Insurance Company (collectively, the "State Farm" defendants). In general, Moore alleges that State Farm has improperly interfered with his insurance business, causing significant economic and noneconomic losses. Specifically, Moore seeks damages for breach of contract, intentional infliction of emotional distress, intentional interference with employment and contractual relationships, antitrust injuries, negligence, and

various other state law violations. In January 2004, the bulk of Moore's claims survived State Farm's Rule 12(b)(6) motion to dismiss. *See Moore v. State Farm Mut. Auto. Ins. Co.*, No. 03-2390, 2004 WL 137853 (E.D. La. Jan. 21, 2004).[3]

On December 10, 2004, Moore filed a motion for leave to file a Second Amended Complaint, which, according to State Farm, disclosed confidential and propriety information and trade secrets. On December 20, 2004, State Farm's request for a temporary restraining order ("TRO") was granted, sealing Moore's motion for leave to file and requiring that all related filings be sealed as well. The TRO remained in effect until February 14, 2005, when Judge Livaudais (1) dissolved the TRO with respect to all filings except Exhibits C and D to the Second Amended Complaint, and (2) issued a preliminary injunction sealing Exhibits C and D and prohibiting Moore from disclosing certain proprietary information. *See Moore v. State Farm Mut. Auto. Ins. Co.*, No. 03-2390, 2005 WL 399395 (E.D. La. Feb. 14, 2005). The Second Amended Complaint has now been dismissed in its entirety. *See* Minute Entry dated June 22, 2005 (Rec. Doc. 122); Minute Entry dated April 12, 2006 (Rec. Doc. 250).

On June 22, 2005, Judge Livaudais granted in part Moore's request for injunctive relief (Rec. Doc. 57), enjoining State Farm from interfering with his right to conduct insurance agency business in Louisiana. *See* Rec. Doc. 122. The next day, the Court also found that the names, addresses, and general policy information of State Farm's insureds are not trade secrets, but did not specifically address Moore's request that State Farm be enjoined from restraining individual insureds from using such information. *See Moore v. State Farm Mut. Auto. Ins. Co.*, No. 03-2390, 2005 WL 1573938 (E.D. La. June 23, 2005). State Farm took an interlocutory appeal and

---

[3] However, Moore's claim for intentional infliction of emotional distress upon the corporate agency was dismissed.

the United States Court of Appeals for the Fifth Circuit vacated part of the June 23, 2005 Order and Reasons and has remanded for consideration of whether Moore has standing to seek injunctive relief on behalf of State Farm's insureds. *See Moore v. State Farm Mut. Auto. Ins. Co.*, 205 F. App'x 218 (5th Cir. 2006). The Fifth Circuit declined to address Judge Livaudais' finding that the policyholder information is not a trade secret.

On June 22, 2005, Moore was also granted leave to file a Third Amended Complaint, which added twenty-eight new factual allegations in support of eight new counts against State Farm and several new defendants, including Mary Bitzer, a State Farm corporate officer, and Fortis Insurance Company.[4] On June 7, 2006, the Court granted in part State Farm's motion to dismiss certain allegations in the Third Amended Complaint. *See Moore v. State Farm Mut. Auto. Ins. Co.*, 439 F. Supp. 2d 615 (E.D. La. 2006), *reconsideration denied*, 2006 WL 2067714 (E.D. La. July 19, 2006).

In response, State Farm has asserted a counterclaim against Mr. Moore, his corporation, and his wife Blanche Moore (collectively, now, "Plaintiffs"). In the counterclaim, State Farm alleges that the Plaintiffs intentionally converted insurance policies written and serviced by State Farm and sold their interest in such policies to an independent insurance agency owned and operated by Mrs. Moore. State Farm further alleges that the Plaintiffs printed and improperly removed copies of thousands of pages of policyholder information to their home. State Farm seeks several declarations that the Plaintiffs breached their contractual obligations by virtue of these activities and requests associated injunctive relief.

Lastly, the Plaintiffs filed a separate action in this District on July 7, 2006, seeking a

---

[4] However, the Court struck that portion of the first paragraph of the Third Amended Complaint which sought to add as party defendants unspecified State Farm subsidiaries.

declaration that they are entitled to indemnity and defense coverage from their insurers American Home Assurance Company and State Farm Fire & Casualty Company for the claims made against them by the other State Farm entities in the underlying consolidated litigation. The Plaintiffs' requests for coverage have repeatedly been denied by both insurers, forcing the Plaintiffs to finance this litigation themselves.

## II. LAW & ANALYSIS

There are multiple outstanding motions in this litigation. As noted, the Court will defer consideration of several motions on questions of liability, as the parties are currently briefing the issue of whether the related California state-court litigation has any preclusive effect on the instant cases.[5] However, a number of motions can be resolved at this time. The Court will address these motions separately and issue its respective orders at the end of each subsection. The Court will conclude by summarizing all of its orders in one location.

### A. Remand of June 23, 2005 Order and Reasons

The Fifth Circuit has remanded Judge Livaudais' Order and Reasons dated June 23, 2005 (Rec. Doc. 123), which discusses, among other things, Moore's Motion for Injunctive Relief (Rec. Doc. 57) and State Farm's Motion to Strike Motion for Injunctive Relief (Rec. Doc. 72). In addition, State Farm has filed two motions with respect to these issues: (1) a Motion to Vacate (Rec. Doc. 433) the preliminary injunction granting the relief requested in Paragraph A of Moore's motion and (2) a Motion to Set Oral Argument (Rec. Doc. 435) concerning

---

[5] Specifically, the Court defers ruling on the following motions: Rec. Doc. 338, Rec. Doc. 345, Rec. Doc. 359, Rec. Doc. 382, Rec. Doc. 396, Rec. Doc. 413, Rec. Doc. 431, Rec. Doc. 459, and Rec. Doc. 490.

Paragraph C of Moore's motion (Rec. Doc. 435).[6]

### 1. Paragraph A

At the original hearing on Moore's motion, Judge Livaudais granted the relief requested in Paragraph A, prohibiting "any interference by State Farm in the right of Moore and/or the Moore Agency to conduct insurance agency business as licensed insurance agents in the state of Louisiana." With respect to Paragraph A, the Fifth Circuit has held that State Farm failed to preserve its objection to the granting of this relief. *See Moore v. State Farm Mut. Auto. Ins. Co.*, 205 F. App'x 218, 219 (5th Cir. 2006). Accordingly, this Court will not revisit Paragraph A of Moore's motion, and instead will allow the preliminary injunction to stay in place pending a final resolution of this case on the merits. Therefore, IT IS ORDERED that State Farm's Motion to Vacate (Rec. Doc. 433) is DENIED.

### 2. Paragraph C

In Paragraph C, Moore sought to enjoin State Farm from restraining "the use by individual customers of their name, address or policy information which State Farm contends is 'trade secrets' that have been released to third parties, released to Moore for use in the NFIP Insurance Program and are therefore no longer subject to any claim of trade secrecy." Judge Livaudais discussed this request, but found that "the names, addresses and general policy information of State Farms' insureds belong to the insureds. Each insured may disclose that information at will, and to anyone for any purpose." *See Moore v. State Farm Mut. Auto. Ins. Co.*, No. 03-2390, 2005 WL 1573938, at *2 (E.D. La. June 23, 2005). Thus, Judge Livaudais

---

[6] To be consistent, the Court will continue to refer to the relief requested in Moore's motion alphabetically by paragraph. To be precise, Moore requests relief in various sub-paragraphs of section XXVII of his motion.

"granted in part" Paragraph C of Moore's motion. However, the Fifth Circuit has vacated this ruling and remanded for clarification. *See Moore v. State Farm Mut. Auto. Ins. Co.*, 205 F. App'x 218, 220-21 (5th Cir. 2006).[7]

As the Fifth Circuit noted, "the only relief Moore sought under paragraph C was to prohibit State Farm from restraining the use by individual customers of their own policy information." *See Moore v. State Farm Mut. Auto. Ins. Co.*, 205 F. App'x 218, 220 (5th Cir. 2006). Although a district court "can grant injunctive relief to non-parties," it may only do so "if necessary to give the named plaintiffs the continuing relief to which they are entitled." *Great W. Directories, Inc. v. Sw. Bell Tel. Co.*, 63 F.3d 1378, 1391 (5th Cir. 1995). This Court agrees with Judge Livaudais' conclusion that Moore would not have been entitled to injunctive relief even if he had sought to enjoin "State Farm from enforcing the contractual provisions that prohibit *plaintiffs* from using [customer information] to solicit business from State Farm's insureds." 2005 WL 1573938, at *2 (emphasis added). *A fortiori*, Moore cannot obtain such relief for non-parties. Accordingly, IT IS ORDERED that Moore's Motion for Injunctive Relief (Rec. Doc. 57) is DENIED IN PART with respect to Paragraph C, and that State Farm's Motion to Strike (Rec. Doc. 72) is GRANTED IN PART with respect to Paragraph C. IT IS FURTHER ORDERED that State Farm's Motion to Set Oral Argument (Rec. Doc. 435) is DENIED AS MOOT.

### B.    Fortis Appointment and Termination

As noted above, in July 2000 State Farm began to market and sell individual health

---

[7] Judge Livaudais denied Moore's remaining requests for relief in Paragraphs B, D, E, F, and G of his motion by granting State Farm's motion to strike. These rulings have not been challenged and remain in place.

insurance policies underwritten by Fortis Insurance Company. Moore was appointed to sell such policies, but allegedly without his knowledge or consent. In 2003, following the above disputes with State Farm, Fortis terminated Moore's appointment to sell its products as well. Moore has asserted various claims against both State Farm and Fortis with respect this separate appointment and termination. Fortis now moves for summary judgment on all of Moore's claims against it.

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. When considering a motion for summary judgment, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004). If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

In Count 11 of Moore's Amended and Restated Complaint, he alleges that State Farm and Fortis violated both federal and state antitrust law:

> State Farm and Fortis Insurance Company committed an act of boycott when it conspired to restrain trade by terminating Moore's agency appointment with Fortis. This termination resulted in an unreasonable restraint of Moore's agency's health insurance sales. Since the termination of Moore's agency's appointment with Fortis, its clients have been denied access to health insurance which has resulted in damage to competition in the health insurance market. Moore's agency can no longer provide health insurance to its clients or prospective clients in his geographical market area.

(Am. & Restated Compl. ¶ EEE.)[8] The only other allegation against Fortis appears in Count 16 of the Third Amended Complaint, which seeks "damages from both State Farm and Fortis for their actions terminating the authority of Moore and/or the Moore Agency to sell health insurance at the direction of State Farm for reasons that are totally unrelated to the contracts comprising the law between the parties." The Court previously found that, taking the allegations in Moore's four complaints together, "his claims against Fortis pass Rule 8(a) muster." *See* Order and Reasons dated March 15, 2006, at 6 (Rec. Doc. 222).

Moore contends that pursuant to *Fashion Originators' Guild of America v. Federal Trade Commission*, 312 U.S. 457 (1941), a *per se* rule of illegality should apply to the allegations of group boycott in this case, presumably because he views the alleged restraint as a horizontal combination, rendering proof of anticompetitive effects unnecessary. However, for the most part, Moore relies on populist era case law that is no longer controlling. Regardless, the Court finds that this case "contains no horizontal aspect, but involves only a vertical action undertaken by suppliers, the insurance company defendants, against their agent." *Blackburn v. Crum & Forster*, 611 F.2d 102, 104 (5th Cir. 1980).

Moreover, "the *per se* rule has not been applied to collective refusals to deal" where "exclusionary or coercive conduct" is not present. *E.A. McQuade Tours, Inc. v. Consol. Air Tour Manual Comm.*, 467 F.2d 178, 187 (5th Cir. 1972); *see also Rothery Storage & Van Co. v. Atlas Van Lines*, 792 F.2d 210, 215-16 (D.C. Cir. 1986) (collecting authorities). The United States Supreme Court has made it clear that "departure from the rule-of-reason standard must be

---

[8] Despite these allegations, Moore did not name Fortis as a defendant in the Amended and Restated Complaint. However, Fortis was named in the Third Amended Complaint, which incorporated all prior allegations by reference. Accordingly, the Court addresses Moore's claims against Fortis in Count 11 on their merits.

10

based upon demonstrable economic effect rather than as in *Schwinn* upon formalistic line drawing." *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 58-59 (1977).  Accordingly, the Court finds that Moore's antitrust claims in this case are subject to a rule-of-reason analysis. *See, e.g., Hood v. Tenneco Texas Life Ins. Co.*, 739 F.2d 1012, 1017-19 (5th Cir. 1984).

In applying the rule of reason, "the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Sylvania*, 433 U.S. at 49.  In general, any potential anticompetitive effect "can only be evaluated by analyzing the facts peculiar to the business, the history of the [alleged] restraint, and the reasons why it was imposed." *Nat'l Soc'y of Prof'l Engineers v. United States*, 435 U.S. 679, 692 (1978).  However, "[i]n an antitrust case . . . summary judgment is still appropriate where the plaintiff does not produce significant probative evidence demonstrating that a genuine issue of (material) fact exists." *Carlson Mach. Tools, Inc. v. Am. Tool, Inc.*, 678 F.2d 1253, 1258 (5th Cir. 1982) (citations omitted).

The Supreme Court has stated that with respect to group boycott, "the boycotters and the ultimate target need not be in a competitive relationship with each other." *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 543 (1978).  Indeed, the Supreme Court has also found the Sherman Act to be applicable to "concerted refusals to deal in cases where the target is a customer of some or all of the conspirators who is being denied access to desired goods or services because of a refusal to accede to particular terms set by some or all of the sellers." *Id.* In these circumstances, however, an antitrust injury must "reflect the anticompetitive effect either of the violation or of the anticompetitive acts made possible by the violation." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).

Here, it is undisputed that Fortis' share of the individual health insurance market in

Louisiana was less than five percent during the years 2001 through 2005.  (Berquist Aff. Oct. 27, 2006.)  The Fifth Circuit has held that as a matter of law, "the termination of a dealer by a supplier lacking market power cannot have an adverse effect on competition."  *Hood*, 739 F.2d at 1018.  Moore makes no attempt to redefine the relevant market.  In these circumstances, it is "simply not an antitrust violation" for Fortis to terminate its relationship with Moore, "even if the effect of the [termination] is to seriously damage" Moore's business.  *Burdett Sound, Inc. v. Altec Corp.*, 515 F.2d 1245, 1249 (5th Cir. 1975).

Accordingly, the Court finds that Moore has "failed to provide adequate evidence of anticompetitive effect to raise a material fact issue and to preclude summary judgment under the rule of reason."  *Hood*, 739 F.2d at 1019.  For the same reasons, Moore's antitrust claims also fail under Louisiana state law.  *See Gulf States Land & Dev., Inc. v. Premier Bank N.A.*, 956 F.2d 502, 508 (5th Cir. 1992).  Lastly, Moore's Rule 56(f) request for further discovery also lacks merit, as he has not identified any factual information that might dictate a different result.[9]

Thus, IT IS ORDERED that Fortis Insurance Company's Motion for Summary Judgment (Rec. Doc. 373) is GRANTED and that all of Moore's claims against Fortis, in both Counts 11 and 16, are hereby DISMISSED WITH PREJUDICE.

### C.    Coverage Issues

As noted above, the Plaintiffs filed a second lawsuit in July 2006 against American Home Assurance Company ("American Home") and State Farm Fire and Casualty Company ("State

---

[9] In denying Fortis' earlier motion to dismiss, the Court did not specifically address the breach of contract allegations in Count 16, focusing instead on Moore's antitrust allegations.  *See* Order and Reasons dated March 15, 2006, at 6 (Rec. Doc. 222).  However, because Moore has never alleged the existence of a contract with Fortis (indeed the original Fortis appointment is alleged to have been made without Moore's knowledge or consent), the Court finds that the breach of contract claim against Fortis in Count 16 also fails as a matter of law.

Farm F&C"). The Plaintiffs seek a declaration that they are entitled to insurance coverage for the defense and indemnity of the claims asserted by the other State Farm defendants in the underlying consolidated litigation.[10] Specifically, the Plaintiffs seek (1) attorneys' fees and expenses incurred with regard to State Farm's Motion for Injunctive Relief, filed on December 20, 2004 (Rec. Doc. 31), and associated injunction proceedings, and (2) defense and indemnity with regard to the State Farm counterclaim (Rec. Doc. 158) and amended counterclaim (Rec. Doc. 351). The insurers contend that the respective policies do not provide coverage in this case.

The Court has already discussed the applicable standards for granting summary judgment. *See supra* Part II.B. The interpretation of an insurance contract is typically a question of law that can be properly resolved in a motion for summary judgment. *See Indep. Fire Ins. Co. v. Sunbeam Corp.*, 99-2182 & 99-2257 (La. 2/29/00), 755 So. 2d 226, 230. Under Louisiana law, an insurance policy is an agreement between the parties and is interpreted using ordinary contract principles. *See Reynolds v. Select Props., Ltd.*, 93-1480 (La. 4/11/94), 634 So. 2d 1180, 1183. Therefore, when the words of the policy are clear, unambiguously express the intent of the parties, and lead to no absurd consequences, the contract must be enforced as written. *See Cent. La. Elec. Co. v. Westinghouse Elec. Corp.*, 579 So. 2d 981, 985 (La. 1991). If, however, the words of the policy are ambiguous, the ambiguous provision is to be construed against the drafter and in favor of the insured. *See La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-911 (La. 1/14/94), 630 So. 2d 759, 763-64.

### 1.     *American Home Assurance Company Policy*

The parties have filed cross-motions for summary judgment on the issue of coverage

---

[10] The Plaintiffs make an ancillary claim for damages as well, seeking reimbursement of past and future expenses associated with the defense of such claims.

under the American Home policy.  During the relevant time periods, American Home issued a professional liability "errors & omissions" insurance policy to Jim Moore Insurance Agency, Inc., bearing Policy No. 18-22-1744, which provides in the insuring agreement that American Home will "pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of any claim . . . arising out of . . . [a]ny negligent act, error or omission in rendering or failing to render professional services for others in the Insured's capacity as an Insurance Agent."  (Ex. A to American Home's Motion.)

American Home argues that there is no coverage because the claims made by State Farm against the Plaintiffs in its motion for injunctive relief and in its counterclaim will not require the Plaintiffs to pay damages, as required by the policy.  In addition, American Home argues that State Farm does not allege negligence by the Plaintiffs in the rendering of professional services for others.  The Plaintiffs respond that State Farm seeks damages under article 1997 of the *Louisiana Civil Code* and that State Farm's allegations are sufficient to trigger coverage.

The Court finds, however, that State Farm does not seek damages in this litigation, but only injunctive and declaratory relief.  It is undisputed that State Farm did not seek damages by virtue of its Motion for Injunctive Relief, filed on December 20, 2004 (Rec. Doc. 31).  Similarly, State Farm does not seek damages in either its counterclaim or amended counterclaim.  *See* Counterclaim ¶¶ 18, 29; Amended Counterclaim ¶¶ 29, 40.  The only mention of damages appears in the jurisdictional statement for the joinder of additional counter-defendants, in which State Farm notes that "the amount in controversy, including the value of injunctive relief," exceeds $75,000.  *See* Counterclaim ¶ 22; Amended Counterclaim ¶ 33.  "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."  *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S.

333, 347 (1977). State Farm's attempt to value the injunctive relief sought does not transform its counterclaim into one for damages.

Lastly, the Plaintiffs point to State Farm's answer, which asserts as its twenty-seventh defense that "[p]ursuant to La. Civ. Code art. 1997, Defendants are entitled to offset against Plaintiffs' claimed damages any foreseeable or unforeseeable damages that ought to be awarded for Plaintiffs' bad-faith breach of contact." *See* Answer and Affirmative Defenses at 14 (Rec. Doc. 23); First Amended Answer and Affirmative Defenses at 14 (Rec. Doc. 248). Article 1997 provides that "an obligor [who acts] in bad faith is liable for all . . . damages, foreseeable or not, that are a direct consequence of his failure to perform." La. Civ. Code. Ann. art. 1997.

The Court finds, however, that the Plaintiffs cannot "become legally obligated to pay" damages by virtue of State Farm's set-off affirmative defense, and therefore that this affirmative defense does not trigger coverage under the policy. By pleading article 1997 as an affirmative defense in its answer, and by abandoning any claims under article 1997 in its counterclaim, State Farm has limited its relief under this article to a reduction of the Plaintiffs' damages. At most, State Farm may be entitled to a set-off up to, but not exceeding, the amount of the Plaintiffs' claims. *See Myers v. Hurley Motor Co.*, 273 U.S. 18, 27 (1927) ("The defense, in effect, is that the plaintiff was guilty of tortious conduct to the injury of the defendant in the transaction out of which his own cause of action arose. In such case it is well settled that the relief is by way of recoupment–that is, that the amount of defendant's damage can be allowed only in abatement or diminution of plaintiff's claim–and that defendant cannot, at least in that action, recover any excess.").

Because the plain language of the American Home policy provides coverage only for "sums which the Insured shall become legally obligated to pay as damages," the Court finds that

15

the Plaintiffs are neither entitled to reimbursement of fees and costs associated with the injunction proceedings nor to indemnity or defense related to State Farm's counterclaim. *See Aetna Cas. & Sur. Co. v. Hanna*, 224 F.2d 499, 503 (5th Cir. 1955) ("The obligation of the insurer to pay is limited to 'damages,' a word which has an accepted technical meaning in law.").[11]  Accordingly, IT IS ORDERED that American Home's Motion for Summary Judgment (Rec. Doc. 408) is GRANTED and that the Plaintiffs' Cross-Motion for Summary Judgment (Rec. Doc. 418) is DENIED.

### 2.   *State Farm Fire and Casualty Company Policies*

The parties have also filed cross-motions for summary judgment on the issue of coverage under the State Farm F&C policies. During the relevant time periods, State Farm F&C provided (1) a business office insurance policy to Jim Moore, bearing Policy Number 98-14-6305-2, (2) a commercial liability umbrella policy to Jim Moore Insurance Agency, Inc., bearing Policy Number 98-CW-7308-6F, (3) a business office insurance policy to Blanche Moore d/ba Moore Insurance Agency, bearing Policy Number 98-CW-0906-8, and (4) a commercial liability umbrella policy to Blanche Moore d/ba Moore Insurance Agency, bearing Policy Number 98-CW-7024-3F. These policies contain the same language as the American Home policy discussed above, providing coverage only for "those sums that the insured becomes legally obligated to pay as damages." *See* Ex. 1-3 to State Farm F& C's Answer (Rec. Doc. 314).

For the reasons discussed above with respect to the American Home policy, the Court also finds that there is no coverage under the State Farm F&C policies. Accordingly, IT IS ORDERED that State Farm Fire and Casualty Company's Motion for Summary Judgment (Rec.

---

[11] Thus, the Court need not address whether or not State Farm's allegations relate to the provision of professional services.

Doc. 427) is GRANTED, and that the Plaintiffs' Cross-Motion for Summary Judgment (Rec. Doc. 436) is DENIED.

### D. Plaintiffs' Motion to Strike Testimony

The Plaintiffs move the Court to strike the testimony elicited from Grant Gravois, a State Farm employee who oversaw Moore's geographical region, by State Farm's counsel after stopping Gravois' deposition to allegedly coach the witness. The Plaintiffs argue that this violated Rule 30(d)(1) of the *Federal Rules of Civil Procedure*, and that pages 207:12 through 209:5 of Mr. Gravois' deposition testimony should be stricken. However, the Court finds that whether or not the witness was coached is a matter to be explored on cross-examination and ultimately weighed by the finder of fact. Accordingly, IT IS ORDERED that the Plaintiffs' Motion to Strike Testimony (Rec. Doc. 354) is DENIED.

### III. CONCLUSION

To summarize, the Court issues the following orders for the foregoing reasons:

(1) IT IS ORDERED that State Farm's Motion to Vacate (Rec. Doc. 433) is DENIED.

(2) IT IS ORDERED that Moore's Motion for Injunctive Relief (Rec. Doc. 57) is DENIED IN PART with respect to Paragraph C, and that State Farm's Motion to Strike (Rec. Doc. 72) is GRANTED IN PART with respect to Paragraph C. IT IS FURTHER ORDERED that State Farm's Motion to Set Oral Argument (Rec. Doc. 435) is DENIED AS MOOT.

(3) IT IS ORDERED that Fortis Insurance Company's Motion for Summary Judgment (Rec. Doc. 373) is GRANTED and that all of Moore's claims against Fortis, in both Counts 11 and 16, are hereby DISMISSED WITH PREJUDICE.

(4)     IT IS ORDERED that American Home's Motion for Summary Judgment (Rec. Doc. 408) is GRANTED and that the Plaintiffs' Cross-Motion for Summary Judgment (Rec. Doc. 418) is DENIED.

(5)     IT IS ORDERED that State Farm Fire and Casualty Company's Motion for Summary Judgment (Rec. Doc. 427) is GRANTED, and that the Plaintiffs' Cross-Motion for Summary Judgment (Rec. Doc. 436) is DENIED.

(6)     IT IS ORDERED that the Plaintiffs' Motion to Strike Testimony (Rec. Doc. 354) is DENIED.

New Orleans, Louisiana, this 4th day of May, 2007.

*[signature: Eldon E. Fallon]*

UNITED STATES DISTRICT JUDGE